(21 Misc. Rep. 327.)

### SCHNITZLER v. KELLY.

#### (Supreme Court, Appellate Term.    October 1, 1897.)

1. SALES—RESCISSION BY BUYER—ELECTION.
     Where there is an agreement to furnish certain goods according to sample, and the purchaser knows by inspection, when they are delivered to him, that they are not equal to the sample, he is bound to exercise his election promptly, and to return or offer to return them immediately after discovering their quality; otherwise, he is liable for the price.

2. SAME—MEASURE OF DAMAGES—PROFITS.
     Where goods delivered to a purchaser are not up to the sample by which they were sold, and he returns them, he cannot recover as damages the difference between the agreed price and the price at which he would have been able to sell them under an existing contract with a third party, unless he disclosed his contract at that price to the seller when the contract in suit was made; but the measure of damages is the cost of supplying the proper article.

Appeal from Fourth district court.

Action by Rose Schnitzler, doing business as Schnitzler & Co., against Thomas Kelly, to recover under a contract for making 4,600 lanyards.    The defense was denial of performance, with counterclaims for breach of contract and for goods sold.    There was a judg-

ment in favor of plaintiff for $250, besides costs, and defendant appeals.  Affirmed on condition.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Wm. Douglas Moore, for appellant.

Herman Hearst, Jr., for respondent.

DALY, P. J.  The plaintiff sued for the contract price of 4,600 white cotton lanyards, which she agreed to furnish according to a certain sample.  The defense disclosed was that all of the lanyards delivered except 300 were inferior to the sample, and the defendant claimed damages for failure to deliver 4,700 out of the lot of 5,000 which were ordered.  The deliveries of lanyards were made by the plaintiff on October 4th (200), January 11th (300), January 13th (500), January 15th (700), January 19th (500), January 21st (600), January 25th (600), January 30th (600); and the claim was made for 600 more, which were manufactured, but not delivered.  The total demand of the plaintiff for the above deliveries was $275.  The justice gave judgment for $250.  The first delivery, of 200 lanyards, was not in accordance with the contract, and this was conceded by the plaintiff, who waived a claim therefor before the commencement of the action. The price of that lot was $11, and we may assume that so much of the plaintiff's demand was disallowed by the justice.  Of the subsequent deliveries, those made from January 11th to January 25th, both inclusive, and amounting to 3,200 lanyards, were received and retained by the defendant until March 2d, when they were returned to the plaintiff.  In the interim, defendant had delivered them at the navy yard to the government, under a contract which he had with the latter.  For these goods so retained, the plaintiff was undoubtedly entitled to recover, for the reasons given below.  The 600 lanyards delivered on January 30th were immediately rejected and refused by the defendant, and apparently with good reason.  The additional 600 lanyards for which plaintiff claims were never delivered or tendered to the defendant, and no recovery therefor can be had. They were undoubtedly of the same kind and quality as the 600 which were rejected by the defendant, and the evidence clearly establishes that they were not up to the sample.  What that sample was, whether one furnished to the plaintiff by the defendant, or one submitted to the defendant by the plaintiff, is a matter of dispute; but, conceding that it was the latter, the plaintiff's evidence fails to show that the deliveries in question conformed to it. Her best witness, an expert, testified that, for trade purposes, the specimens taken from the deliveries were identical with the sample, that they were the same in general construction so far as the naked eye could determine, but conceded that, if a dealer ordered a 30-thread weave from him, he would consider it filling his order to ship him a weave 25 to the inch.  The defendant's expert testified without contradiction that there was a difference of four threads to the inch in the specimens exhibited to him, and that that would make a difference in strength in the feel of the goods, and as regards their hardness and firmness.

The plaintiff is entitled to recover for the lanyards delivered from January 11th to January 25th, because, even if they were, as defendant claims, not equal to the sample, he knew this fact by inspection as each lot was delivered, and, notwithstanding such knowledge, retained them, and offered them to the government under his own contract. He was bound to exercise his election promptly, and to return or offer to return the goods immediately after discovering their quality by inspection. If he failed to do so, he is liable for the price. Box Co. v. Baker, 21 Misc. Rep. 35, 46 N. Y. Supp. 885.

The defendant attempted to avoid the effect of his retention of the goods by testimony that he was solicited by the plaintiff's agent to offer them to the government, in the hope that they might be accepted; but the testimony of the plaintiff's agent positively contradicts this assertion, and the issue of fact thus presented must be deemed to have been determined by the justice in the plaintiff's favor. There is no such preponderance of proof on the part of the defendant as warrants us in disturbing the finding. On the contrary, there is some corroboration of plaintiff's witness in the correspondence of the parties. On January 26th, defendant wrote to plaintiff: "Complaints are made of variation in size and color of yarns, which requires your immediate attention." This was written after all the deliveries in question had been made, and after the government had, on January 21st, notified the defendant of the rejection of 1,200 lanyards. If those goods had been offered to the government at plaintiff's request, we should expect a communication of a different tenor from the defendant, and a rejection of the goods, whereas plaintiff is merely notified that the matter requires her attention. There was no reference to the alleged request of plaintiff, and no rejection of the goods even then. Although the government first notified the defendant of rejection on the 21st of January, the goods were not returned to the plaintiff until the 2d of March ensuing. For the goods so retained, therefore, viz. 3,200 lanyards, at $6 per 100 ($192), the plaintiff was entitled to a judgment, less an admitted counterclaim of $14.62 for goods sold, leaving due her $177.38. The judgment in her favor for $250 was excessive, and should be modified accordingly.

The defendant's counterclaim of damages for plaintiff's failure to deliver 4,700 lanyards in conformity with the contract was properly disallowed, for want of evidence of the cost of supplying the proper article. The defendant assumed that the measure of his damage was the difference between the $6 per 100 which he was to pay the plaintiff and the $9 per 100 which he was to get from the government. It was not shown, however, that the contract with the government at that price was disclosed to the plaintiff at the time that the latter made the contract which is the subject of this action; so that the parties could be assumed to have contracted with reference to the defendant's dealings with the government, or the profit he was to make therefrom. It cannot be doubted that, after plaintiff's contract was made, she knew that these goods were to be delivered to the government; but there is no evidence that the terms of

such contract were disclosed to her, and it is not at all probable that defendant would have made such disclosure.

If the plaintiff consents, the judgment in her favor will be reduced to $177.38, with costs and extra costs as allowed by the justice, and, as so modified, will be affirmed for that amount. If such consent be not given, the judgment will be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

———

(21 Misc. Rep. 306.)

### JONAS v. LONG ISLAND R. CO.

(Supreme Court, Appellate Term.  October 1, 1897.)

1. CARRIERS—EVIDENCE OF NEGLIGENCE.
   The mere fact that the stopping of a passenger train at a station is accompanied with a "jerk," with nothing to show that it was of more than ordinary violence, or that it was avoidable with the exercise of reasonable care upon the part of the employés of the railroad company, does not establish any negligence; nor does the mere fact of injury to a passenger, resulting therefrom, raise any presumption of their neglect.

Appeal from city court of New York, general term.